## BISHOP *vs.* WILLIAMSON.

It furnishes no legal ground for disturbing a verdict, that one of the jury has been tampered with, unless the act complained of be done by one of the *parties* or his *agent*, or by his consent and arrangement.

Nor, that one of the jury *misunderstood* the instructions of the Judge.

A vender of tickets may lawfully sell *after* the drawing of the lottery, if he be ignorant of the result of the drawing.

When the defendant, as Post-Master, was charged with unlawfully neglecting and refusing to deliver a letter from his office, it was held to be introducing no *new cause of action*, to amend, by adding a count, charging the *same act* to have been done by one not duly sworn, whom he wrongfully permitted to have the care and custody of the mail in his office.

When a letter was sent by the managers of a lottery to a vender of tickets, inclosing a prize list or statement of the drawing, which the Post-Master unlawfully refused to deliver to such vender, but delivered it to another, who availing himself of the information it contained, purchased of such vender a ticket that had drawn a prize — the injury was holden to be the *immediate* consequence of such unlawful with-holding of the letter; and that, consequently the true measure of damages would be the net amount of the prize.

A Post-Master is liable for the acts of one whom he permitted to have the care and custody of the mail, in his office, not having been *sworn* according to law.

In an action charging the Post-Master for the misfeasance of such an one, it is not necessary to *allege* in the declaration that the Post-Master is *responsible* for such misfeasance, that being matter of *law*.

Since the passage of the law of *March*, 1830, *ch.* 463, judgment cannot be arrested after a general verdict rendered, if any *one* of the counts in the writ be good.

THIS was an action of the *case* brought by the plaintiff, a vender of tickets, against the defendant as Post-master at *Belfast*. There were five counts in the writ — but stripped of all technicality, the action was to recover damages for the refusal of the assistant Post-master to deliver a letter addressed to the plaintiff, containing a prize list of the drawing of a lottery in *Portland* and delivering it to a person not authorised to receive it ; in consequence of which, the plaintiff had sold a quarter of a ticket for seventy-five cents, after it had actually drawn a prize of $2000, or $500 to the quarter.

The defendant denied that any such letter was received at his office ; and much evidence was introduced on both sides touching the matter in issue, which it is deemed unnecessary to report.

The counsel for the defendant requested *Weston J.* who tried the cause, to instruct the jury, that, it was not lawful for the plaintiff to sell and dispose of tickets in a lottery, after the drawing of such lottery. But the Judge declined giving such instruction, but stated to the jury that the plaintiff, without violation of law, might sell tickets, which might have been drawn, while ignorant of the result of such drawing, but that it would be a fraud upon the purchaser for the vender to sell a ticket which he knew had drawn a blank.

The Judge was further requested by counsel for the defendant to instruct the jury, " that if they should return a verdict in favor of the plaintiff, if, in their opinion, there was no fraud, or wilful withholding of the letter containing the prize list by the defendant, they should find such damages only, as they should believe a prudent man would have been content to have received for such prize list. That, the fair value of the tickets to the plaintiff, as an article of sale, before he knew of the result of the drawing, was their current value before the drawing — and that this, therefore, would be the price which a prudent man would pay for the prize list, which the plaintiff had failed to receive." But, he declined so to instruct the jury.

On the question of damages the Judge gave it as his opinion to the jury, that if by the act or omission of the Post-master at *Belfast,* or his assistant, the plaintiff had lost his prize list, the suffering party should be restored to all he had lost by the act complained of — that, if he had received the prize list, he would have found that the quarter ticket of which he was the owner had drawn the fourth part of $2000 — not receiving it, he was induced to part with the same quarter for seventy-five cents — that he had actually lost therefore, the difference between that sum and the actual value of the quarter as a prize, after deducting the 15 *per cent.* retained by the managers, with interest upon that sum from the time when it was payable. He added, however, that he gave this view of the proper measure of damages, as his own opinion which they would adopt or not as it might commend itself to their judgment. That, if any other rule of damages seemed to their minds, more just and equitable, they were at liberty in this particular, to govern themselves by their own sense of what the

justice of the case required. The jury returned a verdict for the plaintiff, adopting the rule of damages suggested by the Judge.

The questions raised at the trial were reserved for the decision of the whole Court. The defendant also objected to an amendment by adding the four last counts, leave for which was granted by the Court. He also moved in arrest of judgment, on the 3d. 4th. and 5th. counts, " because 1, the only cause of action alleged in either of said counts, is either for the negligence of one *Joel Hills* or of one *Henry Cargill*, who were in charge of the Post-office in said *Belfast*, without alleging negligence or fault in said *Williamson* in appointing said *Hills*, or said *Cargill*, or any fault in said *Williamson* in superintending the Post-office.

2. It is not alleged in either of said counts that said *Williamson* was any way responsible for the acts, doings of, misfeasance or nonfeasance of either the said *Hills*, or *Cargill*.

3. Because there is no legal cause of action set forth in either of said counts against said *Williamson*.

4. Because said counts are otherwise materially defective, so that no judgment can by law be rendered thereon."

There was a further motion to set aside the verdict on the ground of its being against the weight of evidence — and also, on the ground that during the trial, one of the jury was improperly approached by one of the plaintiff's witnesses, with intent to produce an undue influence on his opinion as a juror. The facts upon which this last motive was predicated are sufficiently stated in the opinion of the Court — as are also those touching the other questions raised.

*Allen* and *Williamson*, in the defence, insisted 1. that the amendment involved a new cause of action, and therefore should not have been allowed, and cited *Pratt* v. *Baker & al.* 10 *Pick.* 123 ; *Haynes et ux.* v. *Morgan*, 3 *Mass.* 208 ; *Phillips* v. *Bridge*, 11 *Mass.* 242 ; *Dunlap* v. *Munroe*, 7 *Cranch*, 242. At all events it could not be done except on terms. 1 *Greenl.* 415. *Rule* 15; *Selden* v. *Beale*, 3 *Greenl.* 178 ; *Bartlett* v. *Crosier*, 17. *Johns.* 458 ; *Vancleef* v. *Therasson & al.* 3 *Pick.* 12.

2. The selling of the ticket after the drawing of the lottery, was against law, and therefore the plaintiff is not entitled to recover for the loss he pretended to have sustained. *Hunt* v.

*Knickerbocker*, 5 *Johns.* 334; *Mount* v. *Wait*, 7 *Johns.* 434; 1 *Com. on Con.* 31, 44; *Lansing* v. *Lansing*, 8 *Johns.* 414; *Bunn* v. *Ricker*, 4 *Johns.* 426.

3. Then as to the damages, it was contended that it should be a legal and natural consequence of the act complained of, to entitle the plaintiff to recover. In this case the consequences were too remote. 1 *Chitty's Pl.* 387, 390; *Boyce* v. *Bagliffe*, 1 *Camp.* 58; *Maxwell* v. *Pike*, 2 *Greenl.* 8; *Thurston* v. *Hancock & al.* 12 *Mass.* 220; *Salem Bank* v. *Gloucester Bank*, 17 *Mass.* 30; *Harris* v. *Bacon*, 4 *M. & S.* 27; 2 *Esp. N. P.* 621; 6 *Cowan*, 266; 2 *Kent's Com.* 472.

Interest should not have been allowed unless the verdict be grounded on the fraud of the defendant. *Amory* v. *Brigham*, 5 *Johns.* 24; *Watkinson* v. *Lowton*, 8 *Johns.* 164. On the question of damages generally they cited further, 1 *Johns.* 396; 2 *Cowp.* 754; 9 *Mass.* 484; 2 *Kent's Com.* 474; *Story on Bailment*, 300 *to* 303; 6 *T. R.* 411.

4. But the defendant is not liable — he is only liable for his own torts and omissions, and not for those of his deputies, whose appointment is recognised by law. *Dunlap* v. *Munroe*, 7 *Cranch*, 242.

The plaintiff should have sought his remedy against the person who obtained the prize list and purchased the ticket. 3 *East*, 1 : 3 *Stark. Ev.* 1584.

5. The first two counts do not charge the defendant with negligence in appointing proper assistants, or in supervising their conduct — and in the three last no sufficient cause of action is set forth, because the principal is not liable for the acts of his deputies. See cases before cited.

6. The verdict should be set aside as being against the weight of evidence. The counsel here went into a particular examination of the testimony and cited 11 *Pick.* 227; 5 *Pick.* 15; 5 *Cowan*, 451; *Stetson* v. *Veasie*, *supra*; *Goddard* v. *Cutts*, *supra*.

7. It should also be set aside on the ground that there was tampering with the jury. *Knight* v. *Freeport*, 13 *Mass.* 218; 1 *Johns.* 112; *Cottle* v. *Cottle*, 6 *Greenl.* 140; 10 *Johns.* 239; 1 *Pick.* 337; 13 *Johns.* 487.

*Sprague* and *Stevens*, for the plaintiff, — the former of whom submitted his argument in writing.

MELLEN C. J. at a subsequent term, delivered the opinion of the Court.

In this case numerous questions have been presented by the defendant and his counsel, and our attention has, in the course of the argument, been directed to each. Before we enter upon the examination of those arising on the report of the Judge, and connected with his decisions and instructions to the jury, or the motion for a new trial, as being contrary to evidence or the weight of evidence, or the motion in arrest of judgment, we will dispose of the motion which has been made to set aside the verdict, on the ground, that during the trial, one of the jury was improperly approached by one of the plaintiff's witnesses, with intent to produce an undue influence on his opinion as a juror. On this point the facts were these. *Silas Warren*, one of the jury, testified that during the trial, and, he thought, after the arguments were closed, and before the evidence was summed up by the presiding Judge, *Daniel Howard*, one of the witnesses for the plaintiff, happened to see the juror as he was on his way to the Courthouse, but without appearing to seek an interview, observed that *Simpson*, who was a witness for the defendant, had contradicted him upon a certain point, which he named: but that he himself was right, for he had a memorandum to prove he was correct. The juror said he presumed *Howard* did not know that he was a juror: that it was all said in a moment. There was no proof that he did know he was a juror, or that the plaintiff was assenting to the above facts or knew of them. If *Howard* knew that *Warren* was a juryman, perhaps it was improper for him to make the above remarks; but in order that a verdict should be impeached by improper approaches to a juryman to influence him, it would seem that such an act should be the act of one of the *parties*, or his *agent*, or by his consent and arrangement. 1 *Inst.* 227; 2 *Roll. Abr.* 714; *Cro. Eliz.* 411; 1 *Ventr.* 125; *Knight* v. *Freeport*, 13 *Mass.* 218. In this case, *Briggs*, who tampered with one of the jurors, was son-in-law of *Knight*, and assisted him in carrying on the cause: and he stated to the juror that the

defence of the cause was a spiteful thing, and that if the plaintiff should lose the cause, he himself must pay the costs : a new trial was granted. It is true that in the case of *Sargent* v. *Roberts & al.* 1 *Pick.* 337, because the Judge who tried the cause, sent a written communication to the jury after the Court had adjourned, while they were deliberating on the cause, and without the knowledge of the parties, the verdict was set aside, but on the ground that a Judge must try a cause in the presence of the parties, and not instruct them in a manner and under circumstances which would deprive a party of the opportunity of excepting to the instructions. Under the circumstances of this case, our opinion is, that the verdict is not to be prejudiced by the facts above stated. Some slight proof was also offered to show that *Job White*, one of the jury, had formed an opinion in the cause before the trial, unknown to the defendant, but it did not appear to be any thing more than some impressions from what he had heard of the former verdict and floating rumors, without professing to have had any knowledge of the facts. This objection also we consider as of no importance.

One other objection to the verdict, of the same *general* character as the others, is, that the jury misunderstood the instructions of the Judge on the question of damages : in support of which, the case of *Sargent* v. *Black*, 5 *Cowan*, 106, was cited. It appeared that he gave no *instructions*, properly speaking, but merely stated what seemed to him to be the proper rule ; but distinctly informed them that they might adopt that rule or not, as it commended itself to their own judgment. The jury found a verdict conformable to the rule intimated by the Judge ; and some of the jury testified that they should not have agreed to such a verdict, had they not, through mistake, supposed themselves bound so to do. If the rule intimated by the Court was a correct one, then the mistake is of no importance. At present we add nothing further on this point ; nor until we consider the correctness of the rule, in another part of our opinion.

We now proceed to the consideration of those objections which are founded upon the record and the report of the Judge ; and as far as we can, we shall proceed in the order of time in examining them. The first of these objections relates to the amendment of

the declaration, made at the last term by leave of Court, by adding the *third, fourth, and fifth* counts. This amendment was objected to on the ground that they introduced and stated a *new cause of action*, and that consequently it was not by law allowable : if so, it is a subject of revision and correction by the whole Court, being a question of *law*, and not one of *sound discretion*, which certainly is not a subject of revision by the whole Court. Before attempting to answer this objection, it is necessary to recur, in a general manner, to the *first* and *second* counts, and thus, by comparing them with the *new* counts, test the merits of the objection. The *first* and *second* counts both charge the wrong, which caused the damages sustained by the plaintiff, to have been done by the *defendant himself*, and not by any of his agents or servants, for whom he was answerable. The *third* count states that the defendant omitted to attend *personally* to or at the post office at any time on the twenty-seventh day of *April*, eighteen hundred and twenty-nine, but left the same in the care of one *Henry Cargill*, permitting him to have the care and custody of the office and all letters and papers in the same, he never having been sworn to the faithful performance of any of the duties of an assistant in the office ; and that the wrong complained of was occasioned by the neglect of said *Cargill*, said *Williamson* being all that day absent from said office. The *fourth* count states that the defendant omitted on the said twenty-seventh day of said *April, personally* to attend to or at the post office, and left the same in the care of one *Joel Hills*, who left it in the care of *Henry Cargill*, the defendant permitting *Hills*, and he permitting *Cargill* to have the care and custody of the office, and all letters, papers and mails that arrived there ; and that said *Cargill* was never sworn : and then proceeds to charge the wrong to the conduct of *Cargill*, in not delivering the letter in question to the plaintiff, whereby he was damaged. The *fifth* count is in substance, and almost in form, similar to the fourth, except that it states the defendant to have left the office in the care of *Hills*, who was never sworn to perform the duties of an assistant to the post-master, — that the *letter* was left in the care and custody of said *Hills*, (acting for said *Williamson*) and that he denied that there was any letter in the office for the plaintiffs, and refused to

deliver the letter to him : thus charging the wrong as done by the act of *Hills,* and as the cause of the damages sustained by the plaintiff. In all the counts the same *cause* is alleged as having produced the injury to the plaintiff : namely, the non-delivery of the letter in question to him, on his request for it, made at the office : though the counts vary as to description of the *person,* having charge of the office and letters at the time of its arrival, and refusing to deliver the letter. How then can the amendment be considered as improperly allowed : each count discloses the same cause of action, but the counts vary from each other in the manner above stated. In the case of *Dunlap* v. *Munroe,* 7 *Cranch,* 242, *Johnson J.* in delivering the opinion of the Court, says, " now the distinction between the relation of a postmaster to his sworn assistant, acting under him, and between master and servant generally, has long been settled : and although the latter relation might sanction the admission of such evidence, we are unanimously of opinion that if it is intended to charge a postmaster for the negligence of his assistants, *the pleadings must be made up* according to the case." The design of the amendment was to have the *pleadings so made up* in this case. In *Haines & ux.* v. *Morgan,* cited by defendant, *Parsons, C. J.* says, " All amendments of declarations consistent with the nature of those originally made, and for the same cause of action," may be legally made. So in *Phillips & al.* v. *Bridge,* 11 *Mass.* 242, which was an action against the defendant, as sheriff, for a default of one of his deputies ; and a new count was added, charging. him generally. The Court say, " In the original count the defendant had notice of the particular facts upon which the plaintiff meant to rely to charge him, and in the new count he is charged generally : but he must have known that it was through the instrumentality of his deputy, that he had become liable, if liable at all." In *Pratt* v. *Bacon,* 10 *Pick.* 123, which was a bill in equity, the amendment proposed was refused. The court say, " This amendment is, in effect, making a *new bill* and a wholly *new case.*" In *Selden & al.* v. *Beale,* 3 *Greenl.* 178, which was assumpsit on an alleged sale and delivery of 10 barrels of pork, this Court granted leave to amend by adding a count charging the defendant as bailiff and receiver. These three last cases, as well

as the first, were cited by defendant. In *Jenny* v. *Pierce*, 4 *Pick.* 385, declaration charged defendant as joint promissor: an amendment was allowed, charging him as guarantor. A count on a promise by an administrator, as such, amended by substituting a count alleging a promise by intestate. *Eaton* v. *Whitaker*, 6 *Pick.* 465. So a promise to testator was substituted for a promise to executor: *Clark* v. *Lamb*, 6 *Pick.* 512. See also *Ball* v. *Claffin*, 5 *Pick.* 303, and *Holmes* v. *Holmes* & *al.* 2 *Pick.* 23. Our opinion is, that the amendment was by law allowable, and that the ruling of the Judge, in granting leave to make it, was correct.

The next objection, in the order of proceeding, is to the instruction of the Judge, as to the question of damages, and the plaintiff's right to sell tickets after the lottery was drawn. With respect to this last point, little need be said. We think the instruction was correct: if the purchaser of the ticket acted fairly, and the plaintiff, at the time of the sale, was ignorant of the result of the drawing, why should not the transaction be valid? If an owner of a ship causes her to be insured after she is lost, the policy will be void on the ground of fraud, if he knew of the loss at the time the policy was effected; but if he was ignorant of the loss and acted fairly, the policy will be valid. We do not see any difference in principle between the two cases. As to the instruction on the subject of damages, it is contended that they were incorrect: that the damages allowed under the influence of the instruction were too remote and not to be considered either as necessary or immediate. It does not appear that the plaintiff sold on the 27th of *April*, any other tickets or parts of tickets, except the *quarter* he sold to *Lane*, or that he had any applications to purchase or any prospect of selling any. This circumstance should be taken into consideration when examining the correctness of the instruction and the question whether the damages were *immediate* or *remote :* if there was no *prospect* or *probability* that he would have sold the *quarter*, if the letter containing the prize list had been delivered to the plaintiff when demanded, then it would seem to follow that the damage was the *immediate* consequence of the non-delivery of it: Now what can be higher proof that there was no such probability and prospect, than the

uncontradicted *fact*, that he *did not* sell such quarter to *Lane* till two hours after the letter, containing the prize list, was demanded. Merely speculative injuries, depending on contingences and events wholly uncertain in themselves, and having no intimate and immediate connection with the unlawful act or breach of contract conplained of, furnish generally no legitimate basis on which to calculate damages: but in the present case the damage sustained by the plaintiff seems not to be of this description. Our opinion is that the instructions on this point were correct, as to interest as well as the principal sum. And, of course, we add that the two instructions which were requested, were properly withheld : and, according to an intimation before given, we would now observe that the misapprehension of some of the jury as to the meaning of the Judge in that part of his instructions relative to the question of damages, can constitute no objection to the verdict.

The defendant has further contended that it was the folly of the plaintiff to pay the prize: that he should have retained the money in his own hands, and contested the claim of the person who drew the prize, or have sought to recover the money back from him. These, and one or two other observations of a similar character, must be considered as mere arguments: whether they are in themselves important or not, we need not now inquire : because no instruction on any of these points was requested, and no principle of law in relation to them is reserved. We therefore forbear an examination of the numerous cases cited by the defendant in support of his objections and reasoning as to this part of the cause ; merely observing that the facts before us do not show that the purchaser of the quarter knew any circumstances, rendering him a fraudulent purchaser; or if he did, that the plaintiff was apprised of his possessing such knowledge. He had an unquestioned right to claim damages of the defendant.

The next question is, whether the verdict is against evidence or the weight of evidence. According to the decision in *Dunlap* v. *Munroe*, the evidence reported to us, clearly does not support either the *first* or *second* count : for, as we have before stated, both those counts charge the defendant *personally*, as having *himself* done the wrongful act or been guilty of the official negligence

Bishop *v.* Williamson.

complained of: but the proof expressly negatives both these counts; and if there were no other counts, we do not perceive how the verdict could possibly be sustained. In respect to the three remaining counts, the same objection does not apply. The evidence adduced by the plaintiff was applicable to one of them; and two successive juries have deemed such proof sufficient to prove the facts therein stated. In case of motions to set aside verdicts as being against evidence or the weight of evidence, this Court has never deemed it necessary to go into a minute examination of the testimony in the cause, to be published by the reporter: such motions being addressed to the sound discretion of the Court, we have been in the habit of stating the result of our investigation, without a formal statement of the grounds of our opinion. On this occasion, therefore, without further remark, our judgment is that there is no sufficient reason for disturbing the verdict, as not being sustained by proof applying at least to one of the last three counts. The facts spread before the jury were numerous; some of them were of a suspicious nature: some were clearly proved, from which others might be inferred: and the jury is the proper tribunal to infer them; it is their peculiar province. *Sherwood* v. *Marvick,* 7 *Mass.* 295, and the cases there cited.

The next question presented for consideration is a motion in arrest of judgment, so far as it respects the *third, fourth* and *fifth* counts. The verdict against the defendant is a general one; and at *common law,* in such a case, if any *one* of the counts is bad, judgment must be arrested; at least, this is the general rule. But this principle of the common law has been abolished by the act of *March* 11, 1830, *ch.* 463, which provides " that when a general verdict is or may be rendered for the plaintiff in a suit in which some of the counts are bad, and any one is good — the judgment shall not, for such reason, be arrested or stayed, or be subject to reversal on writ of error."

We have already quoted a part of the opinion of the Supreme Court of the *United States* in the case of *Dunlap* v. *Munroe,* concluding with these words: " If it is intended to charge a postmaster for the negligence of his assistants, the pleadings must be made up according to the case: and his liability will then only re-

sult from *his own* neglect in not properly *superintending* the discharge of *their* duties in *his* office." See 2 *Kent's Com.* 475. The counts to which the motion has respect, were undoubtedly drawn with a view of bringing the plaintiff's case within the above principle of law as to the correct mode of declaring. We have some doubts as to the sufficiency of the *fourth* and *fifth* counts. We have less reason to question that of the *third* count. This count contains the following averments, (after a statement of the fact that before, during and after the 27th day of *April*, 1829, the defendant was Post-master at *Belfast*, duly appointed and commissioned) and before and during the whole of said twenty-seventh day of *April*, did omit to attend personally to and at the post-office in said *Belfast*, but left the same in the care of one *Henry Cargill*, permitting said *Cargill* all that time to have the care and custody of said office and of all the letters and papers in the same, and of all the mails that arrived at said office : *and he, the said Cargill, was never sworn, nor took any oath to perform any of the duties of an assistant to said Post-master*, nor *any oath relative to the duties of said office*, and while said *Williamson* was absent from said office and the same was, by his consent, so in the care and custody of said *Cargill* as aforesaid." The count then proceeds to state, that on the said 27th of *April*, the letter in question arrived at said office and was there deposited in the care and custody of said *Cargill, acting for said Williamson:* that the plaintiff demanded the letter, but that *Cargill* neglected and refused to deliver the same to the plaintiff or permit him to have it. · The act of Congress, of *March* 3d, 1825, requires that all persons employed " in the care, custody or conveyance of the mail shall, previous to entering upon the duties assigned to them, be sworn before some magistrate faithfully to perform all the duties required of them and abstain from every thing forbidden by the laws in relation to the establishment of post-office and post-roads, within the *United States*." The verdict of the jury has established the truth of the foregoing averments. Do they not bring the case within the principle as laid down by the Court in *Dunlap* v. *Munroe?*

Does not this count contain an explicit and direct charge of neglect on the part of the defendant, in not properly superintend-

ing the discharge of the duties of the office faithfully by those employed by him as assistants? What can be stronger proof of this neglect than his permitting *Cargill* to have the care and custody of the post-office and all papers, letters and mails belonging to and arriving at the office, he not being sworn? He had no right to enter the office as an assistant, especially in the absence of the defendant from it, without being sworn. The permission was expressly forbidden by law: and though we are not disposed to impute to the defendant any improper motives, still it is our duty to remark that he must have known that the permission he gave to *Cargill* was unauthorised and forbidden. We must presume that he *knew* that *Cargill* had never been sworn, for it was *his duty* to know it: but if he *did not* know it, it was *official neglect* in the defendant *not to ascertain the fact.* The law confides no part of the duties appertaining to the post-office to any one, unless he is under the solemn obligation of an oath to his fidelity. Can a post-master be justified in depriving the community of this security? and can he justify or excuse himself from responsibility, when *his own* act, in giving permission to *Cargill*, without any legal authority, to act the part of an assistant, was the occasion of the wrong done to the plaintiff, as is specially alleged. In all that *Cargill* did, he was acting for the defendant, as his agent or servant; and acting in direct violation of law. It is not necessary in this case for us to decide how far a post-master, who has appointed an assistant, of *good character and capacity*, who has been *duly sworn*, shall be answerable for any loss arising from the neglect or misconduct of such assistant, in the necessary absence of the post-master from the office. That question was intended to be raised and decided in the case of *Dunlap* v. *Munroe*, though on examination of the pleadings, which were complicated, it seems it was not raised or distinctly decided. As the post-master has the power of selecting and appointing his own assistants, perhaps the principles of analogy, as well as public policy, would lead to the conclusion that he ought to be held accountable: but we do not decide this point. The present defence does not rest on such facts: *Cargill*, not being under oath, was wrongfully in the care of the office and the defendant knew it: he cannot, therefore, bring himself within the protection of

legal principles, nor avoid the influence of the maxim, that every man must draw his justice from pure fountains. One of the reasons assigned in the motion in arrest of judgment, is, that it is not alleged that the defendant is in any way responsible for the acts, negligence, or malfeasance of said *Hill* or *Cargill.* The defendant's responsibility is a question of law upon the facts stated : the fact stated is, that the said *Cargill* was, at the time mentioned, the agent, servant, or assistant of the defendant — acting unlawfully by the consent and permission of the defendant : a *party is* not bound to aver what the law is : the Court must take notice of that. In *Morley* v. *Gaisford,* 2 *H. Bl.* 442, the plaintiff declared in an action of the case against the defendant for an injury done by the defendant's servant in negligently managing a horse and cart of the defendant, whereby the plaintiff's carriage was damaged. There is no allegation of the master's legal liability for the negligence and mismanagement of the servant. In 2 *Chit. Plead.* 281, there is the form of a declaration against the owner of a coach for the negligence of his servant in driving the same against the plaintiff's chaise : this contains no averment of the owners liability for the negligence of his servant. See also 8th *Wentw. Index,* 47. The liability of the owner depends on the privity between him and his servant, and is the legal consequence. In actions against sheriffs for defaults of their deputies, it may have been usual to aver the legal liability of the principle for such default : but there seems to be no necessity for it. Our statute expressly creates such liability. It being our opinion that the third count is a good and sufficient one, judgment cannot be arrested, though the fourth and fifth should not be found good.

The result is that there must be judgment for the plaintiff.

The motions for a new trial and in arrest of Judgment are both overruled ; and there must be

*Judgment on the verdict.*