BANKERS' MUTUAL CASUALTY CO. v. MINNEAPOLIS, ST. P. & S. S. M. RY. CO.

(Circuit Court of Appeals, Eighth Circuit.   July 14, 1902.)

No. 1,727.

**1. MAILS—RAILROADS AS CARRYING AGENTS—MEASURE OF LIABILITY.**

A railroad company carrying the United States mails, whether under contract or by virtue of the requirements of the constitution and laws, is not in respect to such service a common carrier, but is a public agent of the United States, employed in performing a governmental function and as such it is liable for its own negligence, but not for the negligence or tortious acts of its subordinates or employés in the selection of whom it has exercised ordinary care.

**2. SAME.**

A complaint against a railroad company alleged that under the requirements of the constitution and laws of the United States, but without any contract therefor, it was engaged in carrying the mails between the stations on its line; that by section 713 of the postal regulations of 1893 it was required "to take the mails from, and deliver them into, all intermediate post offices and postal stations located not more than 80 rods from the nearest railroad station" at which it had an agent; that the postal agent on one of its trains delivered a mail sack to defendant's agent at an intermediate station which was within 80 rods of a post office, and that, through the negligence of defendant and its said agent, while the mail sack was in defendant's station house some person to plaintiff unknown obtained access to it, and by means of a false key opened it, and stole therefrom a registered package containing money, to recover the value of which the action was brought.   *Held*, that the complaint stated no cause of action; no facts being alleged which showed any negligence or breach of duty on the part of defendant as a public agent of the United States.

In Error to the Circuit Court of the United States for the District of Minnesota.

Plaintiff in error brought an action in the court below against defendant in error, for the purpose of recovering $3,000 and interest, by reason of the facts alleged in its complaint.   The complaint alleged the following facts:

"That the Bankers' Mutual Casualty Company, during all of the year A. D. 1900, and up to the present time, is and was a corporation duly or-

ganized under the laws of the state of Iowa, and a citizen of said state, with its principal place of business at Des Moines in said state, engaged in the business of insuring banks against loss from robbery and burglary, including the insurance against loss of packages of money, while in the course of transmission from place to place, while regularly carried in the United States registered mails.

"That defendant, during all of the year A. D. 1900, and up to the present time, is and was a corporation duly organized under the laws of the state of Minnesota, and a citizen of said state, with its principal place of business at Minneapolis in said state, engaged in operating a line of railroad situated in the states of Minnesota and North Dakota.

"That the German State Bank, during all of the year A. D. 1900, and up to the present time, is and was a corporation duly organized under the laws of the state of North Dakota, and a citizen of said state, with its principal place of business at the town of Harvey in said state, engaged in a general banking business at said town.

"That during the whole year A. D. 1900, and up to the present time, defendant is and was engaged in carrying the United States mails between the terminal and intermediate stations located upon and along its said line of railroad, under and by virtue of the statutes and laws of the United States, and the regulations established by the post-office department of the United States government, and in pursuance of a fixing of the compensation to be paid to defendant by the United States government for carrying said mails and the person in charge thereof, based upon the last preceding reweighing of said mails, and upon notice in writing, in the usual form, from the second assistant postmaster general of the United States, requiring defendant to carry said mails and the person in charge thereof.

"That said depot at or near the town of Harvey was an intermediate station on that part of defendant's said line of railroad within the state of North Dakota which extends from the station at Hankinson to the station at Portal, and the railroad line between said stations at Hankinson and Portal is designated by, and known to the post-office department of the United States as, 'Railroad Route No. 161,018,' being a distance of 344.58 miles, and the compensation fixed by the United States post-office department to be paid annually by the United States to defendant, during all the period herein referred to, for the carriage of said mails and the person in charge thereof, is and was the sum of sixty-four thousand eight hundred and fifteen and $49/100$ dollars ($64,815.49) at the rate of $188.10 per mile.

"That this substituted plaintiff is not in possession of the aforesaid notice to defendant, and is unable to attach to this petition said notice or a true copy thereof.

"That, during all of the period hereinbefore referred to, there was no contract of any kind between defendant and the United States government concerning or providing for the carriage by defendant of said mails, or any part thereof, or of the person in charge of said mails, upon or along defendant's said line of railway or any part thereof.

"That on or about the 10th day of November, A. D. 1900. the Metropolitan Bank, a corporation organized under the laws of the state of Minnesota, was engaged in transacting a general banking business in the city of Minneapolis in said state, and on or about said date said bank deposited, in the United States mails at Minneapolis in said state, a package containing lawful money of the United States, commonly known and called 'currency,' of the actual cash value of three thousand dollars ($3,000.00), in an envelope properly addressed to the German State Bank at Harvey, North Dakota, and prepaid thereon the postage and registration fee, and said package was thereupon duly registered by the postmaster at said post office; that, from and after the time of depositing said package in said post office at Minneapolis, said package and its contents was the property of said German State Bank.

"That said registered package was covered by insurance and indemnity against loss, while in transit through the United States mails from Minneapolis to said Harvey, under a policy of insurance issued by said Bankers' Mutual Casualty Company, the substituted plaintiff; said insurance being

for the use and benefit of said German State Bank; that a true copy of said policy is hereto attached as part hereof, and marked Exhibit A.

"That on or about November 10th, A. D. 1900, and while said package was in good safety, and prior to the departure of the train carrying said registered package, said Metropolitan Bank deposited in the United States mails, at the post office in said city of Minneapolis, a letter of advice properly addressed to said Bankers' Mutual Casualty Company at Des Moines, Iowa, with postage thereon prepaid; that said letter of advice notified said Bankers' Mutual Casualty Company of the shipment by said Metropolitan Bank of said sum of three thousand dollars to said German State Bank of Harvey, and upon said mailing of said letter of advice the contract of insurance and indemnity of said registered package of currency immediately attached thereto, and became a valid and complete contract of insurance and indemnity, by the said Bankers' Mutual Casualty Company, in favor of said German State Bank.

"That, in the regular course of transmission of the United States mails between the said city of Minneapolis and the said town of Harvey, said registered package was duly delivered by the post-office officials of said city of Minneapolis to the railway mail clerk or other proper postal official, and placed in a railway mail car or other proper car, the property of defendant, then standing upon defendant's said line of railway, and was transported by defendant railway company to defendant's railway depot or station situated in or near said town of Harvey, North Dakota.

"That, prior to the arrival of said registered package at said town of Harvey, the same, together with other registered mail packages and other mail matter, was, by said railway mail clerk in charge of said mails, duly inclosed in a regular United States mail sack or mail pouch, which said mail sack or mail pouch was securely locked or fastened by the official government strap and lock.

"That from and after the time of the depositing of the mail sack containing said currency in defendant's mail car at Minneapolis, Minnesota, for the purpose of transit and transportation for delivery at Harvey, North Dakota, the same was under the exclusive care, custody, and control of the postal clerks regularly employed by the United States government, and in charge of the mail in said car; that the mail sacks containing said registered package, from and after the time of its delivery in said postal car, to the proper postal clerks therein, up to and including the delivery of said mail sack at Harvey, North Dakota, was in the exclusive care, custody, and control of the said postal clerks or authorities.

"That upon the arrival of defendant's said train and postal car at said town of Harvey, North Dakota, said railway mail clerk or other postal official, between eleven and twelve o'clock of said night, delivered said mail sack, duly locked, together with said registered package of currency therein contained, to one James Magson, the night station agent or night operator of defendant at said town of Harvey; that said night station agent or night operator was not sworn as an official or employé of the post-office department of the United States government as required by law, but was then and there employed and duly authorized by the defendant to receive and take charge of all mail matter received over defendant's said line of railway at said town of Harvey, including the mail sack or mail pouch containing said package of currency, and to deposit same in defendant's depot at Harvey, North Dakota, and did so receive, take charge of, and deposit said mail sack or mail pouch.

"That defendant was not sworn as an official or employé of the post-office department of the United States government, and had not subscribed or sworn to any oath relating to or concerning the carriage of the United States mails, or the performance of defendant's duties as such carrier of the mails.

"That section 713 of the postal laws and regulations of the United States of the year A. D. 1893, which was in force at the time of the receipt and transmission of said registered postage, is in words and figures as follows, to wit: 'The railroad company will also be required to take the mails from and deliver them into all intermediate postoffices and postal stations located

not more than 80 rods from the nearest railroad station at which the company has an agent or other representative employed.'

"That said post office at Harvey was an intermediate post office, and was located not more than 80 rods from defendant's railroad station or depot at or near said town of Harvey.

"That, under said postal regulation, it was the duty of said defendant to provide a sufficient and safe receptacle or place for the safety and security of said mail, while in its said custody; also to safely care for and guard said mail sack and its contents during the night; also, to safely deliver the same to the postmaster or postmistress at the post office in said town of Harvey, North Dakota. But, neglecting its said duty in the premises, defendant wholly failed and neglected to provide any receptacle or place for the safe or secure keeping of mail, and also failed to place a duly sworn official in charge of said mail sack, and further wholly failed to safely care for or guard said mail sack and its contents, and also wholly failed to safely deliver the same at the post office, to the postmaster in said town of Harvey; that by reason of defendant's said negligence some person, to this plaintiff unknown, in some manner not known to this plaintiff, obtained access to said mail sack, and opened the same, and abstracted or took therefrom said registered package, whereby the same was wholly lost to said German State Bank.

"That one George A. Soule was then the roadmaster or foreman employed by said defendant at said town of Harvey, or one of defendant's employés or servants, but was not sworn in as an official or employé of the post office department, as required by law, and was not authorized or employed by defendant to take charge of said mail sack, or to perform any duty in relation thereto, and had no right of access to said mail sack, or to the mail therein contained, by virtue of his said employment by defendant.

"That said Soule had previously unlawfully obtained, and caused to be made, a key to the United States government mail sacks or mail pouches, and personally, or with the aid and assistance of some person or persons to this plaintiff unknown, did enter one of the rooms contained in the said depot building, where said mail sack or mail pouch had been placed by defendant's operator or night agent on the floor or wall of said room, and not in any separate room, closet, or other safe receptacle capable of being securely fastened against any intruder or unauthorized person, by lock and key or otherwise; that said room was not designed for or capable of safely keeping valuable articles or property.

"That said Soule, or other person, had no right of access to said room, or to said mail sack or mail pouch, but through the negligence of defendant and its said night operator or night agent, as set forth in this complaint, did gain entrance to said room, and obtain access to said mail sack or mail pouch, and the mail matter therein contained, and did find said mail sack or mail pouch situated or placed as above set forth, so that the same was readily accessible to any person gaining entrance to said room, and did find said mail sack or mail pouch wholly unprotected and unguarded by said night operator or otherwise.

"That said Soule, or other person, by reason of the aforesaid negligence of said defendant and its said night agent or night operator, did obtain access to said mail sack or mail pouch, and did unlock the same, and abstract and take therefrom the aforesaid registered package containing said three thousand dollars ($3,000.00) in currency, and did unlawfully convert the same to his use and benefit, and the same has never been delivered or returned to said German State Bank or to said Metropolitan Bank of Minneapolis, or to this plaintiff, the Bankers' Mutual Casualty Company, or to any one for the benefit of any of them.

"That in consequence of the loss of said package, as hereinabove stated, said Bankers' Mutual Casualty Company, substituted plaintiff, became indebted to said German State Bank of Harvey under its said policy of insurance, and was compelled to and did pay said German State Bank the full amount of the loss so sustained by it, to wit, the sum of three thousand dollars ($3,000.00) in good and lawful money of the United States; the same being the amount of insurance or indemnity held by said German State

Bank, and covered by said policy of insurance. That written demand has been made by said German State Bank and said Bankers' Mutual Casualty Company of and from defendant, for repayment to them or one of them of said sum of three thousand dollars, a copy of which written demand is hereto attached as part hereof, and marked Exhibit B, which payment defendant has refused, and still refuses, to make.

"That, by reason of the foregoing facts, the said Bankers' Mutual Casualty Company has been and is now subrogated to all rights and remedies which said German State Bank of Harvey had against defendant, to recover the sum of three thousand dollars so lost, with interest on said sum from and after the 10th day of November, A. D. 1900.

"That for the purpose of further effectuating the rights of subrogation of this substituted plaintiff, against defendant, and to enable it to recover from defendant the sum so lost, said German State Bank in writing transferred and assigned to the plaintiff all of its rights in and to said money lost, and to sue for the recovery thereof. A true copy of said instrument of assignment is hereto attached as part hereof, and marked Exhibit C."

Defendant in error demurred to said complaint upon the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was sustained by the court, and, the plaintiff in error having elected to stand upon its complaint, the action was dismissed on the merits. The order sustaining the demurrer was duly excepted to, and this ruling of the court is assigned as error.

H. F. Dale (William Connor, George W. Bowen, and Henry Conlin, on the brief), for plaintiff in error.

Alfred H. Bright, for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and CARLAND, District Judge.

CARLAND, District Judge, after stating the case as above, delivered the opinion of the court.

This case presents but one question for our consideration, and that is whether or not the defendant in error is liable to the plaintiff in error upon the facts stated.

No federal decision is called to our attention, and we are unable to find any, parallel to the case at bar. There are, however, well-settled principles of law which we believe must determine the case. It is claimed by plaintiff in error that it is alleged in the complaint, and admitted by the demurrer, that defendant in error had no contract relation with the United States in pursuance of which it carried the mail between Minneapolis, Minn., and Harvey, N. D.; that the duty to carry the mail safely was imposed upon defendant in error by the constitution and laws of the United States; and that, this duty being imposed by law, any person injured by a violation thereof would have his remedy. If we correctly understand counsel, it is argued that there was no contract relation between the defendant in error and the United States, in order to avoid the objection that plaintiff in error stands in no such relation to that contract as would enable it to maintain an action for a breach thereof. In the view we take of the case, however, we do not see how it makes any difference whether defendant in error was carrying the mail under and by virtue of a contract with the United States, or whether that duty was imposed by the constitution and laws thereof; in either event it was a public agent of the United States, and its liability must be determined accord-

ingly. The defendant in error, in regard to its liability for the loss of the money, was in no sense a common carrier. As was said in the case of Banking Co. v. Lampley, 76 Ala. 357, 52 Am. Rep. 334:

"Between a contractor for carrying the public mails and the sender of letters, there is no privity of contract, and the contractor has no right to and receives no remuneration from the sender. The government undertakes the transmission of the mails, and receives pay therefor by the postage charged. The contractor's contract is with the government, and by it his compensation is paid. He owes a duty, not to the sender of the letters as an individual, but to the integral public, springing from his agreement to carry the mails. The public mail is not the proper subject of a common carrier's charge, and the extraordinary responsibility attached by law to such employment does not attach to a mail contractor. He does not become an insurer of the safe transportation of mail matter; the extent of his liability is the same as that of a bailee for hire. The railroad company was not transformed into a common carrier as to the mails because, being engaged in the regular business of transporting goods for the public, it was, at the same time, carrying the mails by direction and employment of the proper department of the government. The occupation of the company was of a dual character. It was acting in two capacities, created and regulated by separate and distinct contracts and employments. The liability of the defendant cannot, therefore, be determined by the rules governing the responsibility of a common carrier."

It seems clear to us that defendant in error was a public agent of the United States in relation to carrying the mail, for the reason that the constitution of the United States conferred upon it the power to establish post offices and post roads, and this power was granted by the people as one of the sovereign powers, to be exercised by the general government exclusively. By virtue of this grant of power, the United States has always, through its post-office department, assumed the exclusive charge of the carriage and delivery of the mail for the benefit of all the people. In doing so, the United States is beyond question engaged in the discharge of a governmental function. All persons or corporations who are engaged in the carriage or delivery of the mail by the authority of the United States, conferred by contract or general laws, are but the instruments used by it to discharge this function. As a practical illustration as to whether the defendant in error was engaged in the discharge of a governmental function, let us suppose that some person had attempted to obstruct the carriage and delivery of this mail sack, which contained the money in controversy, at the post office at Harvey, N. D., while it was in possession of defendant in error. Would not the person be liable to punishment under the penal laws of the United States? Beyond question he would. From whence springs the power of the United States to punish such an act? It springs from the authority that all governments possess of punishing the person who obstructs that government in the lawful discharge of its duty. It now becomes necessary to ascertain what the liabilities of public agents are, and upon this question there seems to be little, if any, conflict of authority. A public officer or agent, provided he has exercised ordinary care to select competent subordinates, is not responsible for the misfeasances or positive wrongs, or for the nonfeasances, or negligences or omissions of duty, of the subagents or servants, or other persons properly employed by or under him in the discharge of his official duties. Rob-

ertson v. Sichel, 127 U. S. 507, 8 Sup. Ct. 1286, 32 L. Ed. 203; Story, Ag. § 319. In reference to the post-office department, it has been uniformly held that the postmaster general, the deputy postmasters, and their assistants and clerks appointed and sworn as required by law, are public officers, each of whom is responsible for his own negligence only, and not for that of any of the others, although selected by him and subject to his orders. Lane v. Cotton, 1 Ld. Raym. 646; Whitfield v. Le Despencer, 2 Cowp. 754; Dunlop v. Monroe, 7 Cranch, 242, 3 L. Ed. 329; Schroyer v. Lynch, 8 Watts, 453; Bishop v. Williamson, 11 Me. 495; Hutchins v. Brackett, 22 N. H. 252, 53 Am. Dec. 248; Conwell v. Voorhees, 13 Ohio, 523, 42 Am. Dec. 206; Story, Bailm. §§ 462, 463; Robertson v. Sichel, 127 U. S. 507. The same doctrine has been extended or applied to mail contractors by the cases of Conwell v. Voorhees, 13 Ohio, 523, 42 Am. Dec. 206; Hutchins v. Brackett, 22 N. H. 252, 53 Am. Dec. 248; Foster v. Metts, 55 Miss. 77, 30 Am. Rep. 504. The court, however, refused to extend the rule to mail contractors in the cases of Banking Co. v. Lampley, 76 Ala. 357, 52 Am. Rep. 334; Sawyer v. Corse, 17 Grat. 230, 99 Am. Dec. 445. The Alabama court adopted and followed the reasoning of the Virginia court. The reasoning of the cases cited is illustrated by the following language taken from the opinion in Banking Co. v. Lampley:

"The contractor, being the person who contracts with and is paid by the government, and who gives a guaranty for the faithful discharge of the service, is the public agent if such contract constitutes an agency. He is the one directly responsible to, and with whom, the government deals. He employs his own carriers, who are paid by him, and who are not known to the government other than as his employés. As to civil responsibility, the contractor stands between the carrier and the government, although, for the purpose of public security, an oath may be required of the carrier, and penalties imposed for violations of the laws of the postal service. In a sense the carrier may be said to do work for the government, not as an agent, but as one employed by the contractor, in his own name, for his individual benefit, and on his personal responsibility, as necessary help to do the service which he has contracted to do. Laborers employed by a contractor for the construction of naval vessels, or for the erection of public buildings, may in the same sense be said to do work for the government, but they are not public laborers. We approve and adopt the legal propositions as to the liability of a contractor, maintained and asserted in Sawyer v. Corse, 17 Grat. 230, 99 Am. Dec. 445."

This reasoning would make the defendant in error a public agent, but would deny that position to the agent at Harvey; the subordinate agent of the defendant in error being what is called a carrier in the opinion under consideration. We do not think that the comparison between a laborer employed by a contractor for the construction of naval vessels or for the erection of public buildings an apt one. The United States in building a public building, or in constructing a naval vessel through a contractor, is not exercising sovereign power or engaged in a purely governmental function. It is acting in its purely private or business capacity. Any one possessed of sufficient means may construct a vessel or build a building. The United States only can carry the mail. Hence we believe that the character of the service in which the agent is engaged must determine in the case at bar as to whether the subordinate agents of the defendant in error, in

so far as they were engaged in carrying the mail, were or were not public agents. Let us now apply the principles of law which, in our opinion are controlling, to the facts in this case. There is nothing alleged in the complaint that would connect the defendant in error personally with the wrong complained of; that is, there is no allegation that any officer of the defendant in error whose act or omission the court would be bound to hold was the act or omission of defendant in error did any act, or omitted to do any act, which caused the loss of the mail. There is no allegation that the defendant in error did not exercise ordinary care in the selection of competent persons to handle the mail after it reached Harvey. The allegation of the complaint in regard to the agent at Harvey is as follows:

"That upon the arrival of defendant's said train and postal car at said town of Harvey, North Dakota, said railway mail clerk or other postal official, between eleven and twelve o'clock of said night, delivered said mail sack, duly locked, together with said registered package of currency therein contained, to one James Magson, the night station agent or night operator of defendant at said town of Harvey; that said night station agent or night operator was not sworn as an official or employé of the post-office department of the United States government as required by law, but was then and there employed and duly authorized by the defendant to receive and take charge of all mail matter received over defendant's said line of railway at said town of Harvey, including the mail sack or mail pouch containing said package of currency, and to deposit same in defendant's depot at Harvey, North Dakota, and did so receive, take charge of, and deposit said mail sack or mail pouch."

The fact that Magson was not sworn is not controlling, for if the defendant in error, in its business in carrying the mail, was a public agent, then it was responsible for its own negligence only, and not for the negligence of its servants engaged in the same business. If the defendant in error was a person, this case would be plain. The apparent difficulty arises from separating the negligence of defendant in error from the negligence of its subordinate agent arising from the fact that a corporation must perform all its acts through agents. We think, however, that there is a well-defined distinction with reference to its duties as a carrier of the mail. To illustrate: Supposing the agent Magson had left the mail sack on the depot platform, and by reason thereof the same had been stolen. This, in the absence of any showing that defendant in error had not used proper care in the selection of Magson as its agent, would have been the negligence of Magson, for which he would have been liable, but it would not have been the negligence of defendant in error. If, however, some officer of defendant in error who stood in such a relation to the company that his negligence would be its negligence should negligently do some act whereby a loss occurred from the mail, then defendant in error would be liable. Let us now examine the acts of negligence alleged. Section 713 of the postal regulations of 1893, set out in the complaint, determined the duty of defendant in error in relation to the mail sack after its receipt by Magson. The regulation is as follows:

"The railroad company will also be required to take the mails from and deliver them into all intermediate post offices and postal stations located not more than 80 rods from the nearest railroad station at which the company has an agent or other representative employed."

Whatever duty this regulation imposed upon defendant in error must be determined from the regulation itself. The demurrer admits the existence of the regulation, not the pleader's opinion or legal conclusion of its effect. It simply made it the duty of defendant in error to deliver the mail sack at the post office. There is no allegation that the mail sack was not delivered at the post office, but that, after it was delivered to Magson, some person unknown to the pleader opened the mail sack, and abstracted the package of money in controversy. We know nothing about the facts connected with the loss of the money except what is alleged in the complaint, and in the discussion of the case we of course disclaim any intention of reflecting on the character of any one. The allegations of the complaint are entirely consistent with the theory that Magson stole the money. If so, in the absence of any allegation of negligence of defendant in error in employing him, there is no evidence of negligence that would charge the defendant in error, as all the precautions that it is alleged would have prevented the theft would not have prevailed against Magson, for by the act of the postal clerk and defendant in error the custody of the mail sack was delivered to him. Mere proof that the package of money was stolen, no matter by whom, creates no liability against defendant in error, unless its own negligence was the direct cause of the larceny, as contradistinguished from the negligence of its agent at Harvey. We are not informed by the record as to what was done with the mail sack after Magson deposited the same in defendant in error's depot, or what became of it afterwards. We are satisfied, however, that, if the negligence of any one directly contributed to the larceny, it was the negligence of Magson, for whose negligence in the matter of carrying the mail the defendant in error is not liable.

The judgment below must be affirmed, and it is so ordered.